IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| HAROLD A. and SHERRY MEADOR, | ) | CASE NO. 06-80509-G3-13 |
| | ) | |
| Debtors | ) | |
| | ) | |

## MEMORANDUM OPINION

The court heard the "Amended Trustee's Motion to Dismiss" (Docket No. 38) filed by William E. Heitkamp, the Chapter 13 Trustee and has reviewed the Response (Docket No. 40) filed thereto by Harold A. and Sherry Meador, Debtors, the pleadings, including the Trustee's Objection to Confirmation (Docket No. 49), docket sheet and entire file, evidence, arguments of counsel, and each parties' post hearing Memoranda (Docket Nos. 56 and 57).  The following are the Findings of Fact and Conclusions of Law of the court.  A separate Judgment will be entered granting the Trustee's motion and dismissing the above captioned case.  To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such.  To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

## Findings of Fact

1.   Harold A. and Sherry Meador ("Debtors") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on

November 30, 2006.

2. The Chapter 13 Trustee moved to dismiss this case on the basis that the information contained within Form B22C and Schedules I and J is incorrect, false, and misleading and that the Debtors' proposed plan does not meet the requirements of section 1325(b) that all of a debtor's projected disposable income will be applied to make payments under the plan.

3. On the petition date, Debtors filed Schedule I, "Current Income of Individual Debtor(s)," Schedule J, "Current Expenditures of Individual Debtor(s)," Official Form B22C, "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income," and a Plan. Docket Nos. 1, 2, and 3.

4. The calculations made pursuant to Form B22C determine the applicable commitment period of a Chapter 13 plan and determine a debtor's disposable income which is to be applied to make payments to unsecured creditors under a proposed plan. Docket Nos. 2 and 9. Form B22C provides a presumptive definition of projected disposable income, but the presumption may be rebutted. *In re Knippers,* 2007 WL 1239297, Bkrtcy. S.D. Tex., 2007.

5. Form B22C, filed November 30, 2006, reflects a total of $8,526.93 in average monthly income for Debtors for the six months prior to the filing of the instant case. It also

2

indicates annualized current monthly income of $102,323.16. Debtors identified a family size of three, and, because Debtors' annualized current monthly income exceeded the median income for a family of three in Texas, the applicable commitment period for the plan is five years and Debtors' monthly disposable income is determined under section 1325(b)(3). Section 1325(b)(3) refers to section 707(b)(2) in connection with this calculation. Docket No. 3.

      6. Debtors' Form B22C identifies qualified retirement deductions and deductions asserted to be allowed under Section 707(b)(2) of the Bankruptcy Code, in the monthly amount of $8,616.83. Thus, the monthly disposable income on Debtors' Form B22C reflects a negative sum of $89.90, resulting in no monies per month as disposable income. Docket No. 3. Debtors' initial Schedule I, filed on the petition date, reflects an average combined monthly income of $3,864.62. On Line 17 of Schedule I, Debtors described an anticipated decrease in income within the following year: "[i]ncome listed is gross income, including overtime, for the final bi-weekly pay period in October, 2006. Debtor's wages vary from month to month based upon available overtime. Debtor will not be working any overtime in the near future." Debtors' initial Schedule J reflects average monthly expenses of $4,936.00, leaving a monthly deficit of $1,071.38. Docket No. 1.

7. Regardless of the fact that Form B22C and Schedule J reflect no monies available as disposable income, Debtors' initial plan proposed to pay $41 each month for 60 months to the Chapter 13 Trustee for distribution to creditors. The plan proposed distributions to Debtors' counsel for payment of $550.00 over fifteen months and to unsecured claims for an approximate dividend of 3%. Debtors' Schedule F indicates $43,906.45 in unsecured claims. The other provisions of the plan included direct monthly payments to Irwin Mortgage Corporation ($1,181.00), Texas Dow Employees Credit Union ($452.12), Toyota Motor Credit ($271.64), and Wells Fargo Bank-Auto Finance ($436.00). Docket No. 1.

8. The Trustee filed a dismissal motion contesting the accuracy of the figures in Schedule J and Debtors' inability to fund a plan. Docket No. 22. In response, Debtors filed an Amended Schedule J on February 23, 2007 (Docket No. 24), entitled "Current Expenditures for Individual Debtor(s) - *First Amended Budget For Plan*" (italics added). Regardless of Debtors' added nomenclature in the title of this schedule, Schedule J is an official bankruptcy form ("Official Form 6J") which reflects the average or projected monthly expenses of a debtor and debtor's family. Amended Schedule J shows Debtors' average monthly expenses as $3,808.00 which results in a monthly net income of $56.62 for Debtors. Debtors' expenses of $4,936, reflected on

Debtors' initial Schedule J, were reduced by $1,128.00.

        9. The Trustee filed another motion to dismiss (Docket No. 26) challenging the figures on Form B22C for monthly disposable income as well as the inability of Debtors to fund a plan. On March 8, 2007, Debtors amended Form B22C, Schedules I and J, and their Plan. Docket Nos. 28, 29 and 30. On Amended Form B22C, Debtors recalculated the deductions for debt payment which resulted in a monthly disposable income of $77.00. This second Amended Schedule I, although designated "Amended," had no changes. This third amendment to Schedule J was designated solely as "Amended" and did not include the previously added nomenclature. This amendment further reduced Debtors' expenses by $30.00, resulting in a monthly net income of $86.62. Debtors' Amended Plan proposed monthly payments of $87.00 for 60 months, but in addition to distributions to Debtors' counsel, the plan included distributions to the Chapter 13 Trustee for payment of his statutory fee and increased distributions to the unsecured creditors to 8%. The plan provisions regarding direct monthly payments to specific creditors remained the same.

        10. The Chapter 13 Trustee filed the instant motion to dismiss claiming that the information on Form B22C and Schedules I and J is incorrect, false, and misleading. Additionally, the Trustee contends that the Debtors' proposed plan does not apply all of Debtors' projected disposable income to the plan payments.

11. On September 11, 2007, Debtors again filed an amended Form B22C, Schedules I and J, and an amended plan. Docket No.s 42, 43, and 44. On September 12, 2007, they filed a "Corrected & Amended" Plan. Docket No. 46. This second amendment to Form B22C identifies $6,932.15 as Debtors' total current monthly income from March 1, 2007 through August 31, 2007. After deductions are taken under Section 707(b)(2) of the Bankruptcy Code, in the monthly amount of $7,715.28, the monthly disposable income reflects a negative sum of $783.13.

12. Form B22C provides a starting point for calculating monthly disposable income, after which the court may consider evidence that provides a different amount. Form B22C is intended to provide information as to a debtor's current monthly income for the six months prior to filing the petition, which in this case is from May through October of 2006. The Debtors' second amendment covers the period from March to August 2007. Debtors have used the form improperly.

13. The second amendment to Schedule I (filed September 11, 2007) reflects monthly income of $4,711.38, an increase from the figure on the March 8, 2007 schedule, $3,864.62. The third amendment to Schedule J (filed September 11, 2007) reflects increased monthly expenditures of $4,732.00, resulting in a monthly deficit of $20.62. Debtors' Corrected & Amended Plan (Docket No. 46) provides for monthly plan payments

of $11.00 with distributions to Debtors' attorney and although $44.00 is to be paid to the unsecured creditors over the 60 months of the plan, this ultimately results in a zero dividend to the unsecured creditors.

  14. Harold A. Meador (hereinafter referred to as "Debtor") testified that he works for Dow Chemical and has done so for the past eighteen years as an operator. During the six month period ending on the last day of the calendar month immediately preceding commencement of the instant case, Debtor was working between 48 and 64 hours of overtime. This was due to the fact that there were only six to seven operators working then. Currently, there are 12 operators working and overtime is limited to about one to three days per month.

  15. Debtor claims that, due to the lack of overtime, since the date of filing the bankruptcy petition, November 30, 2007, his earnings have been reduced approximately $1,000 to $1,700 per month. Debtor testified that his initial Schedule J was correct as were the figures and calculations on the initial Form B22C.

  16. All of Debtors' four schedules J list an installment payment of $436 which represents a car payment to Dow Chemical Credit Union. Debtor testified that this loan was for a truck. He testified that he has not made this payment since October or November of 2007. Further, he testified that the

truck was repossessed in January 2007. Although Debtor was not making this payment when the petition was filed, he listed it as an expenditure on his initial and his amended schedules J (which were filed in February, March and September, 2007). Debtor testified that he listed the debt as it was his understanding that he was to list those debts for which he was liable. Further, he testified that he did not know why this figure had been kept on the schedules after the vehicle was repossessed. All three of the Form B22C filed by Debtors also includes this same debt to Dow Chemical Credit Union.[1] As this payment was not being made, this amount was also improperly taken as a debt deduction on Form B22C in calculating Debtors' monthly disposable income. Debtor's explanations were not credible.

17. All four Schedules J filed by Debtors include an expenditure of $175, which represents a loan owed to Texas Dow Employees Credit Union. Debtor testified that although this amount was listed as an expense for Debtors, this payment is made by his daughter. He testified that he has never made this payment.

18. There are fluctuations in the amounts for some of the listed expenditures on all of Debtors' filings of Schedule J. Debtors did not explain the reasons for the fluctuations nor did

---

[1] As to amount of the monthly payment to Dow Chemical Credit Union, there is a slight discrepancy between Forms B22C ($436) and Schedules J ($452.12).

they submit any documentary support for the changes.[2]

19. Each of Debtors' Schedules I reflect repayment of two loans, $239 per month and $261.69 per month. Debtor testified that the loan repaid at $239 per month would be paid in full by August 4, 2008 and the loan repaid at $261.69 per month would be paid on April 28, 2011. The 60 month plan period ends November 30, 2011. Thus, there would be available for payment to unsecured creditors an additional $239 for the last 39 months of the plan, and another $261.69 for the last 7 months of the plan. Debtors failed to disclose this information. The court finds that the plan currently proposed (Docket No. 46) does not commit all of Debtors' projected disposable income to the payment of unsecured creditors.

20. The court finds that the discrepancies and inaccuracies in Debtors' schedules, Forms B22C, and the proposed plan, and the failure of Debtors to explain the fluctuations in the figures contained therein, represent an attempt to manipulate

---

[2] For a family of three, the expenditure for food was initially listed at $700 per month (November 30, 2006), was reduced to $325 (February 23, 2007), reduced again to $295 (March 8, 2007), and then increased to $700 (September 11, 2007). The expenditure for transportation was initially listed as $300 (November 30, 2006), reduced to $100 (February 23, 2007), and then increased to $350 (September 11, 2007). "Other" expenses fluctuated from $103 (November 30, 2006), to zero (February 23, 2007), and then to $60 (September 11, 2007). Clothing expenses were initially $50 (November 30, 2006), reduced to $20 (February 23, 2007), and then increased to $175 (September 11, 2007). Recreation expenses were listed as $100 (November 30, 2006), reduced to zero (February 23, 2007), and then increased to $75 (September 11, 2007). Home maintenance expenses were $50 (November 30, 2006), reduced to zero (February 23, 2007), and then increased to $100 (September 11, 2007). The court notes that the third member of the family is a 20 year old son, who, according to the testimony, is not contributing to the household expenses.

the totals, resulting in attempting to mislead the Trustee and the court.  The current proposed monthly plan payment of $11 amounts to virtually nothing being paid to the unsecured creditors with claims of $43,906.45.  The court finds that Debtors have not been fundamentally fair in dealing with their creditors.  This case has been pending since November 2006.  Debtors have amended their schedules numerous times and have proposed four plans (Docket Nos. 2, 27, 44 and 46).  No purpose would be served in allowing Debtors an opportunity to file additional amendments to the schedules or to propose another plan.

<u>Conclusions of Law</u>

1.   The purpose of the bankruptcy code is to afford the honest but unfortunate debtor a fresh start, not to shield those who abuse the bankruptcy process in order to avoid paying their debts.  A Chapter 13 case may be dismissed for cause.  11 U.S.C. § 1307(c).  Cause may include unreasonable delay by the debtor that is prejudicial to creditors or filing a bankruptcy petition in bad faith.  *See, e.g., Matter of Smith*, 848 F.2d 813, 816 n. 3 (7th Cir. 1988); *In re Molitor*, 76 F.3d 218 (8th Cir. 1996).  Cause may also include denial of confirmation under section 1325 and denial of a request made for additional time for filing another plan or a modification of a plan.  The examples of cause enumerated in § 1307(c) are only illustrative.  *See* 8

10

*Collier on Bankruptcy,* ¶ 1307.04 (Matthew Bender 15th Ed. Revised 1999).

2. When an objection to confirmation is filed pursuant to section 1325(b)(1) and the plan does not satisfy the full payment test of subsection 1325(b)(1)(A), subsection 1325(b)(1)(B) requires the court to determine whether the debtor has committed to the plan all of the debtor's projected disposable income for the applicable commitment period beginning on the date the first plan payment is due.

3. Pursuant to section 1325(a)(3), to be entitled to confirmation, the chapter 13 plan must have been proposed in good faith and may not have been proposed by any means forbidden by law. The determination of whether a plan was proposed in good faith is to be based on all of the circumstances of the case. *See* 8 *Collier on Bankruptcy* ¶ 1325.04 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.) and cases cited therein.

4. No comprehensive definition of good faith exists for purposes of § 1325 and 1307. Courts must define good faith on a case by case basis. Several factors may guide the court's inquiry into good faith. These include whether there are any deficiencies or inaccuracies in debtor's schedules or plan that might amount to an attempt to mislead the court; whether payments proposed by the plan are fundamentally fair in dealing with creditors, including consideration of timing of filing, amount

and proportion of debt that would not be dischargeable in a liquidation, equities of any classification; whether debtor had any improper motivation in seeking relief, as indicated, in part, by circumstances under which debts were incurred. These factors and others constitute a totality of circumstances on which the court is to determine whether or not there has been an abuse of a provision, purpose or spirit of Ch 13. *See In re Chaffin*, 836 F.2d 215 (5th Cir. 1988).

Based upon the foregoing, a separate Judgment will be entered granting the Trustee's motion and dismissing this case.

Signed at Houston, Texas on this 25th day of January, 2008.

_____
LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE